UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-03990-MRA-E | Date | September 24, 2026 |
| Title | *Friedman2, LLP et al. v. Holmes et al.* | | |

| | |
|---|---|
| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| Melissa H. Kunig | None Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER DENYING PLAINTIFFS' MOTION TO REMAND [10]**

Before the Court is Plaintiffs' Motion to Remand (the "Motion"). ECF 10. The Court read and considered the briefing related to this Motion and held a hearing on September 11, 2026. ECF 23. For the reasons stated herein, the Court **DENIES** the Motion.

## I. BACKGROUND

Plaintiffs Friedman2, LLP and Steven R. Friedman (collectively, "Friedman" or "Plaintiffs") initiated this lawsuit against Defendants Crystal Holmes, Bienert Katzman Littrell Williams LLP ("BKLW"), and Anthony Bisconti on February 17, 2026, in Los Angeles Superior Court. BKLW and Bisconti are collectively referred to herein as the "Removing Defendants."

### A. Factual Background

#### *1. The Related Action*

On May 3, 2018, Holmes filed a complaint against Rosalina Harris in this Court alleging that Harris, a detective employed by the Los Angeles County Sheriff's Department, violated her Fourth Amendment rights. *Crystal Holmes v. Rosalina Harris*, No. 2:18-cv-03739-MRA (C.D. Cal. May 3, 2018) (the "Related Action").[1] The jury ultimately returned a verdict in favor of Holmes and awarded her $765,952 in compensatory damages and $1.5 million in punitive damages. Related Action, ECF 135. The Court then entered judgment in favor of Holmes in

[1] The Related Action was initially assigned to the Honorable Philip S. Gutierrez, who presided over all pretrial and trial proceedings. The Related Action was reassigned to the undersigned judge on May 28, 2025, pursuant to the directive of the Chief District Judge and in accordance with the rules of this Court.

the amount of $2,265,952 (the "Judgment"). Related Action, ECF 140. The Ninth Circuit unanimously affirmed the Judgment on April 20, 2021. *Holmes v. Harris*, 845 F. App'x 604 (9th Cir. 2021).

### *2. The Malpractice Action*

On August 31, 2021, Harris, represented by Plaintiffs in this action, commenced a legal malpractice action against the attorneys who represented her in the Related Action (the "Malpractice Defendants"). *Harris v. Pongracz*, No. 21STCV32323 (L.A. Cnty. Super. Ct. filed Aug. 31, 2021) (the "Malpractice Action"). Harris agreed to pay Plaintiffs a contingency fee of 45% of the gross recovery in the Malpractice Action, "as well as an attorney's lien . . . to secure payment of the 45% only in the event of a recovery." ECF 4-2 ¶ 24. On October 22, 2021, BKLW, acting as Holmes's counsel, filed a Notice of Lien in the Malpractice Action on Holmes's behalf, based on the Judgment in the Related Action. ECF 4 ¶ 12.

### *3. The Assignment Order*

On August 9, 2024, Holmes filed a Motion for Assignment Order in the Related Action pursuant to California Code of Civil Procedure §§ 708.510 *et seq.* Related Action, ECF 368. The Motion requested an order directing Harris to assign to Holmes any right to payment from the Malpractice Action to the extent necessary to satisfy the outstanding amount owed on the Judgment. *Id.* at 2. The Court granted the Motion on August 27, 2024. Related Action, ECF 370 (the "Assignment Order").

### *4. Malpractice Action Settlement*

In or around February 2025, a Notice of Settlement was filed in the Malpractice Action, without notice to Holmes. Related Action, ECF 372 at 9. Holmes claims that Friedman was seeking to have the proceeds of that settlement directed to Friedman's client trust account, without notice to Holmes, in violation of the Assignment Order. *Id.*

On May 28, 2025, Holmes filed an ex parte application in the Related Action, seeking an order enjoining Harris, the Malpractice Defendants, and Friedman from transferring any settlement proceeds subject to the Assignment Order and directing the delivery of proceeds of any settlement to Holmes. Related Action, ECF 372. The Court denied the ex parte application but warned that "any attempt to improperly circumvent payment will not be tolerated." Related Action, ECF 377.

## B. Procedural History

### *1. The Instant Action*

In the instant Action, Plaintiffs seek declaratory and injunctive relief regarding the priority of competing lien creditors with respect to settlement proceeds from the Malpractice Action. ECF 4-2 ¶¶ 47–52. Plaintiffs allege that "Holmes through or in addition to [Removing Defendants] asserted that [Defendants] had a lien priority ahead of [Plaintiffs'] lien and assignment such that all sums must not be paid into the Friedman attorney client trust account but must be paid solely into the Bienart attorney client trust account." *Id.* ¶ 39. The Complaint seeks a determination that Plaintiffs' "lien takes priority over any lien by Holmes or [Removing Defendants]." *Id.* ¶ 50. Plaintiffs also ask the Court to "direct that all sums derived from [the Malpractice Action] be ordered into the Friedman attorney client trust account." *Id.* ¶ 51. According to Plaintiffs, the "complaint does not allege any misconduct or improper conduct by Defendants in asserting a lien," but rather "involves the determination of the priority of competing lien creditors between Holmes and, based upon information and belief, Holmes attorney's lien granted to [Removing Defendants] versus the attorneys lien and assignment granted [Plaintiffs] as the attorneys of Ms. Harris." *Id.* ¶ 27.

### *2. Removal*

Removing Defendants filed a Notice of Removal on April 14, 2026, arguing that the Court has diversity jurisdiction over this action. ECF 4. Plaintiff Friedman2, LLP is a law firm with its principal place of business in California, and Plaintiff Steven R. Friedman is an individual who resides in California. ECF 4-2 ¶¶ 1–2. The Complaint alleges that Holmes resides in California, *id.* ¶ 3, though according to the Notice of Removal, Harris is in fact domiciled in North Carolina, ECF 4 ¶¶ 23–24.

BKLW is a limited liability partnership with its principal place of business in California, and Bisconti is an individual who resides in California. ECF 4 ¶¶ 27–28. Removing Defendants thus share the same citizenship as Plaintiffs. Removing Defendants argue that they were fraudulently joined to this action because (1) they have never asserted any lien or interest in the Malpractice Action proceeds on their own behalf; and (2) the Assignment Order precludes them from asserting any such interest. *Id.* ¶¶ 31–36. Removing Defendants argue that the amount in controversy is satisfied because the settlement proceeds at issue exceed $1 million. *Id.* ¶¶ 37–40.

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). They may exercise jurisdiction only when authorized by the Constitution or a statute. *Id.* A federal district court has diversity jurisdiction over a matter where the amount in controversy exceeds the sum or value of $75,000, and there is complete diversity among opposing parties. 28 U.S.C. § 1332(a). Complete diversity exists when "*each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).

Under 28 U.S.C. § 1441(a), a defendant may remove a matter to federal court where the district court would have original jurisdiction. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The removing defendant, however, bears the burden of establishing that removal is proper. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). Removal statutes are to be strictly construed, *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992), and the party seeking removal bears the burden of proving its propriety, *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996). The propriety of removal "may later be tested in the federal court, either on a motion by a party to remand, or by the court on its own motion." *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1065 (9th Cir. 1979). "[A]ny doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus*, 980 F.2d at 566).

## III. DISCUSSION

Plaintiffs' Motion raises four principal arguments in favor of remand: (1) the Court lacks diversity jurisdiction over this dispute; (2) removal is barred by the forum defendant rule; (3) Defendant Holmes has not consented to removal; and (4) the Court should decline to exercise jurisdiction over this matter under the federal abstention doctrine. The Court addresses each of these arguments in turn.

### A. Diversity Jurisdiction

Removal here is based on diversity jurisdiction. ECF 4 ¶¶ 22–40. Plaintiffs' Motion argues that the Court lacks diversity jurisdiction over this action because all three Defendants are, like Plaintiffs, citizens of California, and because the amount in controversy requirement is not met. ECF 10 at 16–31.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-03990-MRA-E | Date | September 24, 2026 |
| Title | *Friedman2, LLP et al. v. Holmes et al.* | | |

### *1. Holmes's Citizenship*

The parties first dispute Defendant Holmes's citizenship. Plaintiffs argue that Holmes is a citizen of California, such that there is no diversity of citizenship between her and Plaintiffs, who are also citizens of California. ECF 10 at 22–25. Removing Defendants argue that Holmes is a North Carolina citizen for purposes of diversity. ECF 14 at 15.

Citizenship for diversity purposes depends on domicile. *Lew v. Moss*, 797 F.2d 747, 749–50 (9th Cir. 1986). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (citing *Lew*, 797 F.2d at 749). Domicile may be established by objective factors, including: "current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes." *Lew*, 797 F.2d at 750.

Here, Plaintiffs allege, on information and belief, that Holmes is an individual residing, owning property, and doing business within the County of Los Angeles. ECF 4 ¶ 4. Removing Defendants, however, submitted a declaration by Holmes in connection with their opposition to the Motion, in which Holmes states that she moved to North Carolina in early 2018 and has continued to own and reside in a home there. ECF 14-1 ¶¶ 2–3. Holmes further states that she has a North Carolina home phone number and driver's license, was employed in North Carolina until her retirement in 2024, and paid taxes in North Carolina. *Id.* ¶¶ 3–4. Holmes states that although she has traveled back to California intermittently, she has maintained her abode in North Carolina. *Id.* ¶ 5. The Altadena property Holmes previously lived in was destroyed in the Eaton Canyon fire in 2025, and the other property Holmes owns in Altadena was damaged due to the fire and "is not habitable." *Id.* ¶ 6.

These uncontested facts lead the Court to conclude that Holmes is domiciled in North Carolina. "[F]or purposes of removal based on diversity of citizenship, a plaintiff's state of residence is presumptively considered to be their state of citizenship." *Pulcini v. Ford Motor Co.*, No. 2:24-CV-08846-JLS-AS, 2024 WL 4836469, at *3 (C.D. Cal. Nov. 19, 2024) (citing *Bradley Min. Co. v. Boice*, 194 F.2d 80, 94 (9th Cir. 1952)). Here, Holmes avers she resides in North Carolina, and Plaintiffs present no evidence or argument to rebut the presumption that she is therefore a citizen of North Carolina.

### *2. The Removing Defendants' Citizenship – Fraudulent Joinder*

Removing Defendants concede that they, like Plaintiffs, are citizens of California. ECF 4

¶¶ 27–28. Nevertheless, they contend that their non-diverse citizenship ought to be disregarded for purposes of assessing diversity jurisdiction because they were fraudulently joined to the action. *Id.* ¶¶ 27–36.

The Ninth Circuit has warned that "[a] defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a 'heavy burden' since there is a 'general presumption against [finding] fraudulent joinder.'" *Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (citing *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009)). "Fraudulent joinder is established . . . if a defendant shows that an 'individual[] joined in the action cannot be liable on any theory.'" *Id.* (quoting *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)). That is, "if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Id.* (quoting *Hunter*, 582 F.3d at 1046).

While "the fraudulent joinder standard shares some similarities with the analysis under Rule 12(b)(6)"—because "[b]oth require some assessment of the plaintiff's lawsuit"—"the test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent." *Grancare*, 889 F.3d at 549 (elaborating that "[a] claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined."). As the Ninth Circuit explained in *Grancare*:

> A standard that equates fraudulent joinder with Rule 12(b)(6) conflates a jurisdictional inquiry with an adjudication on the merits. Because the purpose of the fraudulent joinder doctrine is to allow a determination whether the district court has subject matter jurisdiction, the standard is similar to the "wholly insubstantial and frivolous" standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction. The relative stringency of the standard accords with the presumption against removal jurisdiction, under which we "strictly construe the removal statute," and reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance."

889 F.3d at 549–550 (citing *Bell v. Hood*, 327 U.S. 678, 682–83 (1946); *Franklin v. Murphy*, 745 F.2d 1221, 1227 n.6 (9th Cir. 1984), *abrogated by Neitzke v. Williams*, 490 U.S. 319 (1989); *Gaus*, 980 F.2d at 566). Indeed, even if a defendant cannot withstand a Rule 12(b)(6) motion, "the fraudulent inquiry does not end there. . . . the district court must consider . . . whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend." *Id.* at 550.

In their Complaint, Plaintiffs seek only declaratory and injunctive relief. ECF 4-2 ¶¶ 47–

52. In their Motion, however, Plaintiffs suggest that they intend to amend their Complaint to add a tortious interference with contract claim against Removing Defendants. ECF 10 at 30–31; ECF 17 at 13–19. Because "the Court may consider material extrinsic to the Complaint—including potential but as-yet-unpled claims—in determining whether the . . . Defendants were fraudulently joined," the Court will consider the claims in the Complaint as well as the unpled tortious interference with contract claim. *Loid v. Comput. Scis. Corp.*, No. CV-12-5144-EFS, 2013 WL 808696, at *2 (E.D. Wash. Mar. 5, 2013).

***a) Declaratory and Injunctive Relief***

Removing Defendants argue that Plaintiffs cannot establish a claim for declaratory and injunctive relief against them because they have never asserted any attorneys' lien on their own behalf with respect to proceeds from the Malpractice Action, and the Assignment Order would preclude them from asserting any such claim. ECF 4 ¶¶ 32–36.

Plaintiffs argue that Removing Defendants have "repeatedly argued that all funds must go to their trust account, presumably to be divided between their firm and Defendant Holmes." ECF 10 at 20–21. Plaintiffs contend that Removing Defendants' "continued insistence on being paid all the money from the Malpractice Action is . . . what requires the Court to declare who does and does not have a right to receive[] the Malpractice Action funds." *Id.* at 21. And with regard to the Assignment Order, Plaintiffs argue that it "does not address the fact that Removing Defendants are still seeking to assert a claim that their right to fees takes priority over Plaintiffs' right, or that they have taken the position that all of Plaintiffs' rights are subordinate to all of the Defendants' rights." *Id.* In sum, Plaintiffs argue that that they "are entitled to a judgment which declares that all other Defendants are subordinate to Plaintiffs and that Plaintiffs' lien takes priority over all other claims." *Id.* at 21–22.

"The fundamental basis of declaratory relief is the existence of an actual, present controversy over a proper subject." *Otay Land Co. v. Royal Indem. Co.*, 169 Cal. App. 4th 556, 562 (2008) (collecting cases). "Where it is apparent that the defendant does not actually oppose the position taken by the plaintiff, there obviously can be no controversy and there is nothing to be determined by the court." *Auberry Union Sch. Dist. v. Rafferty*, 226 Cal. App. 2d 599, 603 (1964); *Maxwell v. Brougher*, 99 Cal. App. 2d 824, 828 (1950) ("Obviously there cannot be a controversy unless one party actually opposes the position taken by the other.").

In *Smith v. Bioworks, Inc.*, No. CIV. S-05-1650 FCD EFB, 2007 WL 273948, at *4 (E.D. Cal. Jan. 29, 2007), the plaintiff sued his former employer seeking declaratory relief that his post-termination business activities did not violate California's Uniform Trade Secrets Act, any other federal or state law, or the terms or conditions of his employment agreement, including the non-

compete provisions of that agreement. The president and CEO of the defendant employer submitted a declaration attesting, on behalf of the employer, that the plaintiff's post-termination activities did not violate the non-compete provisions, the terms or conditions of plaintiff's employment agreement, or any other federal or state law. *Id.* at *5. He also declared that "he never attempted to enforce any term of the non-compete clause against plaintiff nor did he express to plaintiff that he believed any violations had occurred as a result of his post-termination activities." *Id.* Based on those statements and "the absence of any evidence that defendant attempted to enforce the non-compete provisions," the court held that "there is no justiciable controversy" under California law as to plaintiff's claims for declaratory relief. *Id.*

Plaintiffs argue that "Removing Defendants have not disclaimed any right to be paid by Holmes or that they have a contract with Holmes which grants them priority to be paid before Holmes." ECF 10 at 21. Plaintiffs further argue that Removing Defendants "have not disclaimed any interest in the funds from the Malpractice Action or that they will be paid from the Malpractice Action money sent to Holmes." *Id.* The Declarations attached to the Notice of Removal, however, indicate otherwise. BKLW's General Counsel Michael Williams attests that "BKLW does not now, nor has it ever, asserted a lien on, or any interest in, proceeds from the Malpractice Action." ECF 4-1 ¶ 4. Bisconti likewise states that he "do[es] not now, nor ha[s] [he] ever, asserted a lien on, or any interest in, proceeds from the Malpractice Action." ECF 4-2 ¶ 3. These unequivocal disclaimers reflect that Removing Defendants "do[] not actually oppose the position taken by the plaintiff[s]," *Auberry Union Sch. Dist.*, 226 Cal. App. 2d at 603, which is that Plaintiffs have "priority over Removing Defendants' rights to be paid from the Malpractice Action," ECF 10 at 20.

Because Removing Defendants affirmatively disclaim the existence of any interest in the proceeds from the Malpractice Action, there appears to be no justiciable controversy as between them and Plaintiffs on that issue.

### *b) Tortious Interference with Contract*

Plaintiffs further argue that Removing Defendants were not fraudulently joined because Plaintiffs can amend the Complaint to add a claim against Removing Defendants for tortious interference with contract. ECF 10 at 25–31. Removing Defendants respond that such a claim would "fail[] as a matter of law" because "every act attributed to the Removing Defendants falls squarely within California's absolute litigation privilege." ECF 14 at 23–24.

To state a claim for tortious interference with contract, a plaintiff must plead: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual

relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

First, Plaintiffs allege that they had a written contract with Harris that entitled them to a 45% contingency as well as an attorney's lien upon all recovery from the Malpractice Action. ECF 4-2 ¶ 24; ECF 10-2 ¶¶ 12–13. Second, Plaintiff Friedman declared that he "informed [Defendant Bisconti] that [Plaintiffs] were on a contingency" with Harris. ECF 10-2 ¶ 23. Third, Plaintiffs allege that Removing Defendants "engaged in bullying and scare tactics," ECF 10 at 31, including threatening the Malpractice Defendants' insurance carrier that they "would be subject to prosecution if Holmes counsel did not receive the Friedman fees,"[2] ECF 17 at 17. Finally, Plaintiffs assert Removing Defendants' actions "scuttled a settlement with a declining limits insurance policy which has now lost value," which has decreased Plaintiffs' potential fees. ECF 10 at 30.

Removing Defendants persuasively argue, however, that Plaintiffs' potential claim for tortious interference with contract would be "absolutely bar[red]" by California's litigation privilege, Civil Code § 47(b), and "subject to a special motion to strike under the anti-SLAPP statute." ECF 14 at 24–25. Plaintiffs respond that "[Removing] Defendants' threats of criminal prosecution of the insurance carrier, and the counsel in the Malpractice Action, and potentially Plaintiffs herein, qualify as unprotected extortionate conduct." ECF 17 at 16.

The California litigation "privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990). To be in furtherance of the objects of the litigation, a communication need only "be connected with, or have some logical relation to, the action." *Id.* at 219–20. It is well-established that the litigation privilege "bars all tort causes of action except malicious prosecution." *Jacob B. v. Cnty. of Shasta*, 40 Cal. 4th 948, 960 (2007).

[2] Although Removing Defendants' counsel contested the veracity of this allegation at the hearing, "'a denial, even a sworn denial, of allegations does not prove their falsity' sufficiently to establish a fraudulent joinder." *Proiette v. AbbVie Inc.*, No. 24-3736, 2025 WL 3093631, at *1 (9th Cir. Nov. 5, 2025) (quoting *Grancare*, 889 F.3d at 551); *see also Faulkner v. Hartford Underwriters Ins. Co.*, No. 2:26-CV-00521-CV (PVCX), 2026 WL 2415853, at *6 (C.D. Cal. Aug. 17, 2026) ("The removing party may present affidavits or other evidence, but the inquiry remains summary: the Court resolves disputed facts and ambiguities in state law in the plaintiff's favor and does not undertake a searching merits determination.").

Every alleged "interference" by the Removing Defendants—that they opposed settlement, ECF 10-2 ¶ 29, communicated with opposing counsel, ECF 17 at 14, "urg[ed] that the defendants in the malpractice action and their insured would be subjected to sanction and contempt . . . for transmitting the settlement payment into the Friedman trust account," *id.* at 14—involves litigation-related communications. *See Next Viet. Projects Found., Inc. v. Koster Films, LLC*, 751 F. Supp. 3d 1005, 1011 (C.D. Cal. 2024) ("[S]ettlement communications are protected under California's litigation privilege."); *Home Ins. Co. v. Zurich Ins. Co.*, 96 Cal. App. 4th 17, 24 (2002) (the litigation privilege "applies to statements made by counsel during settlement negotiations").

Plaintiffs' reliance on *Schoendorf v. U.D. Registry, Inc.*, 97 Cal. App. 4th 227 (2002), does not alter that conclusion. ECF 17 at 18. In that case, the court held that the litigation privilege did not apply because the pertinent communication was about past litigation in which the speaker was not at all involved. *Schoendorf*, 97 Cal. App. 4th at 242. Those facts are not present here, where the challenged communications occurred during ongoing litigation between participating parties.

Plaintiffs further argue that because the litigation privilege "cannot be reconciled" with Cal. Civ. Code § 1788.10,[3] the privilege must be overridden. ECF 17 at 17–18 (citing *Oei v. N. Star Cap. Acquisitions*, LLC, 486 F. Supp. 2d 1089, 1100–01 (C.D. Cal. 2006)). The Court finds it unnecessary to opine on whether the litigation privilege and Section 1788.10 conflict, as Section 1788.10 applies only to conduct by debt collectors towards "debtors." Plaintiffs allege that Removing Defendants told the Malpractice Defendants' insurance carrier that they "would be subject to prosecution if Holmes counsel did not receive the Friedman fees." ECF 17 at 17. The insurance carrier, however, is not a debtor to Holmes—Harris is. ECF 14 at 10. Even if the insurance carriers *were* hypothetically covered by the statute, Plaintiffs have not cited to any authority allowing them to assert this injury on their behalf.

Because the alleged interferences by the Removing Defendants all involved litigation-related communications covered by the litigation privilege, Plaintiffs cannot show that there is a "*possibility* that a state court would find that the complaint states a cause of action against" Removing Defendants. *Grancare*, 889 F.3d at 548 (emphasis in original). Accordingly, the Court finds that Removing Defendants were fraudulently joined and disregards their citizenship

---

[3] Cal. Civ. Code § 1788.10 provides, in pertinent part, that: "No debt collector shall collect or attempt to collect a covered debt by means of . . . [t]he threat that the failure to pay a covered debt will result in an accusation that the debtor has committed a crime where the accusation, if made, would be false."

in determining diversity jurisdiction.

### *3. Amount in Controversy*

Plaintiffs further contend that because "equitable and injunctive relief are the sole claims presented at the time of filing," the amount in controversy requirement for diversity jurisdiction is not satisfied. ECF 10 at 15–16. The Removing Defendants respond that the value of Plaintiffs' lien, which is "the object of this litigation," exceeds $75,000, and therefore the amount in controversy requirement is met. ECF 14 at 20.

"Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 774 (9th Cir. 2017) (quoting *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003)). In assessing whether a defendant has proven the amount in controversy, courts may consider "facts presented in the removal petition as well as any summary-judgement-type evidence relevant to the amount in controversy at the time of removal." *Matheson*, 319 F.3d at 1090 (internal citations omitted). "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)).

The "object of the litigation" is a judgment declaring that Plaintiffs' lien takes priority over any lien by Defendants and an injunction directing all sums derived from the Malpractice lawsuit be directed into the Friedman trust account. ECF 4-2 ¶¶ 48–51. In related filings included as an Exhibit to the Notice of Removal, Plaintiffs valued their interest at $900,000 on a $2 million recovery, plus approximately $200,000 in advanced costs, for a lien position of roughly $1.1 million before interest. *See id.* at 108. This record is sufficient to establish by a preponderance of the evidence that "the value of the object of the litigation" satisfies the amount in controversy requirement. *Cohn*, 281 F.3d at 840.

## B. The Forum Defendant Rule

Plaintiffs' next argument is that because Removing Defendants are citizens of California, they are barred by the "forum defendant rule" from removing this action to federal court. ECF 10 at 15. Removing Defendants respond that the forum defendant rule does not apply where the non-diverse removing parties have been fraudulently joined. ECF 14 at 16.

Under the forum defendant rule, a "civil action otherwise removeable solely on the basis

of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). This rule "confines removal on the basis of diversity jurisdiction to instances where no defendant is a citizen of the forum state." *Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 939 (9th Cir. 2006).

Although the Ninth Circuit has not squarely addressed the applicability of the forum defendant rule to a non-diverse defendant who has been fraudulently joined, Section 1441(b)(2)'s "'properly joined and served language' . . . has widely been interpreted" by district courts in the Ninth Circuit "as reflecting a Congressional intent to prevent the fraudulent joinder of forum defendants in order to avoid removal." *Khashan v. Ghasemi*, No. CV10-00543MMM(CWX), 2010 WL 1444884, at *2 (C.D. Cal. Apr. 5, 2010); *see also Mass. Mut. Life Ins. Co. v. Mozilo*, No. 2:12-CV-03613-MRP, 2012 WL 11047336, at *1 (C.D. Cal. June 28, 2012) ("[T]he 'properly joined and served' language is meant to prevent fraudulent joinder."); *Bertuzzi v. Mutton*, No. CV 24-7075-JFW(AGRX), 2024 WL 3993800, at *2 (C.D. Cal. Aug. 28, 2024) (quoting *Hamm v. Dogtopia Enters. LLC*, No. CV-24-01493-PHX-SMM, 2024 WL 3873489, at *2 (D. Ariz. Aug. 20, 2024)) ("[T]he statutory context of § 1441(b)(2) supports the conclusion that the language 'properly joined and served as defendants' excepts from the statute's prohibition on removal those instances in which a forum defendant is fraudulently joined so as to defeat removal jurisdiction.").

Indeed, applying the forum defendant rule to a fraudulently joined defendant would be inconsistent with the purpose of the rule. "[T]he purpose of the forum defendant rule is tied to the purpose of diversity jurisdiction, which is to 'protect out-of-state defendants from possible prejudices in state court.'" *Rasmussen v. Fox Corp.*, No. 2:25-CV-08115-SPG-PVC, 2025 WL 3268812, at *3 (C.D. Cal. Nov. 21, 2025) (quoting *Lively*, 456 F.3d at 940). "[W]here the forum defendant is fraudulently joined, such that they are all but certain to be dismissed from the action, remanding to state court would leave the remaining out-of-state defendants as the only defendants for purposes of trial—'the precise risk of prejudice that removal was intended to prevent.'" *Id.* (quoting *Ekeya v. Shriners Hosp. for Child., Portland*, 258 F. Supp. 3d 1192, 1199 (D. Or. 2017)).

Because the Court concludes that Removing Defendants were fraudulently joined, removal is not barred by the forum defendant rule.

### C. The Unanimity Rule

The Court next considers whether the Removing Defendants have satisfied 28 U.S.C. § 1446(b)(2)(A), known as the "unanimity rule." Under this rule, "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-03990-MRA-E | Date | September 24, 2026 |
| Title | *Friedman2, LLP et al. v. Holmes et al.* | | |

Plaintiffs argue that removal is improper under the unanimity rule because Holmes has not joined in or consented to removal. ECF 10 at 22. Removing Defendants contend that because Holmes has not been properly served, her consent to removal is not required. ECF 14 at 26–27. Plaintiffs respond that both personal service and mail service have been attempted on Holmes multiple times without success. ECF 17 at 23.

The unanimity rule in 28 U.S.C. § 1446(b)(2)(A) requires the consent of "all defendants who have been properly joined and served." Here, by the time of the hearing, Holmes had still not been served. Thus, at the time of removal, all defendants who had been "properly joined and served"—*i.e.*, BKLW and Bisconti—"join[ed] in or consent[ed] to the removal of the action, which is all that § 1446(b)(2)(A) requires." *Baiul v. NBC Sports, a division of NBCUniversal Media, LLC*, 732 F. App'x 529, 531 (9th Cir. 2018), *as amended* (June 13, 2018).

Accordingly, the Court finds that Holmes's consent to removal is not required.

**D. Abstention**

Finally, Plaintiffs argue that because the instant case is a declaratory relief action which turns on "issues of pure state law," the Court should decline to exercise jurisdiction under the federal abstention doctrine. ECF 10 at 31–32. Removing Defendants respond that abstention is inappropriate because Plaintiffs seek injunctive relief in addition to declaratory relief, remanding would award forum shopping, and "the case directly implicates the Court's own federal court orders and judgments." ECF 14 at 27–29.

"A district court has discretion to dismiss a federal declaratory judgment action when 'the questions in controversy . . . can better be settled in' a pending state court proceeding." *R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011) (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)). But where, as here, plaintiffs also seek damages or "injunctive relief that is independent of, but related to, the requested declaratory relief," federal courts "exercise the jurisdiction given to us and proceed to the merits, consistent with our 'virtually unflagging obligation' to do so." *Am. Bankers Mgmt. Co., Inc. v. Heryford*, 885 F.3d 629, 633 (9th Cir. 2018) (quoting *Vasquez v. Rackauckas*, 734 F.3d 1025, 1041 (9th Cir. 2013)).

Nevertheless, "a federal court may decline to exercise its 'virtually unflagging obligation' to exercise federal jurisdiction, in deference to pending, parallel state proceedings." *Montanore Mins. Corp. v. Bakie*, 867 F.3d 1160, 1165 (9th Cir. 2017), *as amended on denial of reh'g and reh'g en banc* (Oct. 18, 2017) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). "Though exact parallelism . . . is not required, substantial similarity

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-03990-MRA-E | Date | September 24, 2026 |
| Title | *Friedman2, LLP et al. v. Holmes et al.* | | |

of claims is necessary before abstention is available." *United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1203 (9th Cir. 2021) (quoting *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 845 (9th Cir. 2017)). "[T]he requirement of 'parallel' state court proceedings implies that those proceedings are sufficiently similar to the federal proceedings to provide relief for all of the parties' claims." *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 n.4 (9th Cir. 1993). Parallelism "should be addressed as a preliminary matter." *State Water Res. Control Bd.*, 988 F.3d at 1203 (internal quotations omitted).

At the hearing on the Motion, Plaintiffs' counsel argued that the Malpractice Action qualifies as a parallel state proceeding to the instant action because the former will "generate funds" and the latter will "determine who gets the funds." Although the cases are undoubtedly related, the two cases involve different parties and distinct causes of action. Because neither Plaintiffs nor Removing Defendants are parties to the Malpractice Action, the state proceedings cannot resolve Plaintiffs' claims for declaratory and injunctive relief against Removing Defendants. The Malpractice Action therefore does not qualify as a "parallel state proceeding" under *Colorado River*.

Accordingly, the Court declines to abstain from exercising jurisdiction over the instant action.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Remand is **DENIED**.

**IT IS SO ORDERED.**

- : -

Initials of Deputy Clerk mku